COUNTY OF JEFFERSON, Plaintiff-Respondent-Petitioner,

v.

Christopher D. RENZ, Defendant-Appellant.

Supreme Court

*No. 97–3512. Oral argument September 9, 1999.—Decided December 22, 1999.*

(Also reported in 603 N.W.2d 541.)

For the plaintiff-respondent-petitioner there were briefs and oral argument by *David J. Wambach*, district attorney.

For the defendant-appellant there was a brief by *Stephen E. Mays* and *Thomas, Kelly, Habermehl & Mays, S.C.*, Madison and oral argument by *Stephen E. Mays*.

¶ 1. JON P. WILCOX, J. The petitioner, Jefferson County, seeks review of a published decision of the court of appeals, *County of Jefferson v. Renz*, 222 Wis. 2d 424, 588 N.W.2d 267 (Ct. App. 1998), which held that a law enforcement officer must have probable cause for an arrest before asking a driver suspected of driving while intoxicated to submit to a preliminary breath test (PBT) under Wis. Stat. § 343.303 (1993–94).[1] The court of appeals reversed the judgment of conviction against the defendant, Christopher Renz, for driving while intoxicated (OWI) and with a prohibited alcohol concentration (PAC), which was entered in the circuit court for Jefferson County, Judge John M. Ullsvik.

¶ 2. The sole issue on appeal is whether a law enforcement officer is required to have probable cause for arrest before asking a suspect to submit to a PBT. We conclude that the legislature did not intend to require an officer to have probable cause to arrest before requesting a PBT. We therefore reverse the

---

[1] Unless otherwise noted, all references to the Wisconsin Statutes refer to the 1993–94 version.

court of appeals and remand the cause to the circuit court for reinstatement of the judgment of conviction.

## I.

¶ 3. The parties agree that the facts in this case are as follows. At about 2:00 a.m. on February 12, 1996, Deputy Sheriff David Drayna of the Jefferson County Sheriff's Department was on duty as a patrol officer. As he traveled west on Highway 106, a Chevy Camaro with a loud exhaust passed by heading east. Concluding that the exhaust system was in violation of the law, the officer pulled the Camaro over.

¶ 4. When the officer approached the car, the defendant rolled down his window, presented a Wisconsin driver's license and identified himself as Christopher Renz. The officer informed him that he had been stopped for a defective exhaust, and the defendant acknowledged that the exhaust leaked and was loud. During this initial conversation, the officer smelled a strong odor of intoxicants coming from inside the Camaro.[2]

¶ 5. The officer returned to his squad car and ran a standard computer check on the defendant and the Camaro. The check yielded nothing of interest, and the officer returned to the driver's side window. The officer again smelled the strong odor of intoxicants. He asked the defendant to step out of the car and inquired whether he had been drinking. The defendant replied that he was a bartender at a tavern and had drunk three beers earlier in the evening. The officer asked the

---

[2] In addition, the officer noted in his offense report that the defendant's eyes were bloodshot and glassy. Although the defendant annexed this report to his motion to dismiss, the parties did not address this fact at the motion hearing, before the court of appeals, or before this court.

defendant to submit to field sobriety tests, and he agreed.

¶ 6. Officer Drayna had received training on OWI detection, and during his six years with the Jefferson County Sheriff's Department he had made over 200 OWI arrests. His training was based in part on a field sobriety test manual developed by the National Highway Traffic Safety Administration and the U.S. Department of Transportation (DOT).

¶ 7. The first test he administered was the alphabet test. The defendant was able to recite the alphabet correctly. At no time during the test or throughout their conversations did the officer observe the defendant's speech to be slurred.

¶ 8. The next test was the one-legged stand. The officer instructed the defendant to stand with his feet together and his arms directly down at his sides. The defendant was then asked to raise one leg directly out in front of him about six inches off the ground and count from 1001 to 1030 while watching his foot. At 1018, he put his foot down, raised it again, and restarted his count from 1010. He was able to complete the count from 1010 to 1030 without putting his foot down again. The DOT manual lists four standard clues of intoxication to watch for on this test; the defendant only exhibited one clue, putting the foot down.

¶ 9. The third test was the heel-to-toe walking test. The officer instructed the defendant to walk nine steps on an imaginary line, heel to toe, with his arms directly down at his sides, then to turn back and walk another nine steps. The defendant left a half inch to an inch of space between his heel and toe on all of the steps. On his way back, the defendant stepped off the imaginary line on step seven. He then restarted and completed the test. The manual lists eight possible

clues of intoxication for this test; the defendant exhibited two of these, stepping off of the line, and leaving more than a half inch between steps. The officer also observed that the defendant swayed from left to right while performing the test, but because swaying is not one of the clues in the manual, the officer did not account for this in calculating the standardized test. He did, however, consider it to be an indicator of intoxication.

¶ 10. The fourth test was the finger-to-nose test. This test was not from the manual, but the officer had learned it in his recruit class and through training at the sheriff's department. He instructed the defendant to stand with his feet together, arms out to his sides, with fingers extended. He was then supposed to tilt his head back, close his eyes, and touch the tip of his nose, first with his right index finger, then with his left. The defendant touched the tip of his nose with his right index finger, but touched the upper bridge of his nose with his left.

¶ 11. The fifth test was another standardized test, the horizontal gaze nystagmus (HGN) test, which the officer was certified to perform after twenty-four hours of training. The test requires a subject to stand with his or her feet together and arms down and follow the tip of a pen with his or her eyes as the officer moves the pen from one side to the other. The specially trained officer watches for six "clues" of intoxication, relating to a particular kind of jerkiness in the eyes. The defendant exhibited all six clues. Based on his training, the officer believed that this indicated a blood alcohol level of at least .10.

¶ 12. After administering these tests, the officer asked the defendant if he would submit to a PBT. The defendant agreed. The PBT indicated his blood alcohol

level was .18.[3] The officer then placed the defendant under arrest for OWI in violation of Jefferson County ordinance 83.16,[4] adopting Wis. Stat. § 346.63(1)(a). In addition, after blood tests had been performed, the defendant was cited with violation of the county's ordinance adopting the PAC statute, Wis. Stat. § 346.63(1)(b).[5]

¶ 13. Through his attorney, the defendant filed various motions objecting to the arrest and to the evidence against him, including a motion to suppress evidence because of an unlawful detention and arrest. In that motion, he argued that the officer lacked the requisite probable cause to request a PBT under Wis. Stat. § 343.303[6] and that the PBT result therefore

---

[3] An alcohol level of .1 or more is a "prohibited alcohol concentration." Wis. Stat. § 340.01(46m).

[4] The relevant Jefferson County ordinance provides:

[T]he statutory provisions in Chapters 340 to 348. . .of the Wisconsin Statutes describing and defining regulations with respect to vehicles and traffic,. . ., are hereby adopted. . . . Any future amendments, revisions or modifications of the statutes incorporated herein are intended to be made part of this code. . . .

Jefferson County, Wis., Ordinance No. 83–16, § 1 (January 17, 1984).

[5] § 346.63(1) provides:

No person may drive or operate a motor vehicle while:

(a) Under the influence of an intoxicant. . .; or

(b) The person has a prohibited alcohol concentration.

[6] Wis. Stat. § 343.303 provides in relevant part:

If a law enforcement officer has probable cause to believe that the person. . .has violated s. 346.63(1). . .the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose. The result of this preliminary breath screening test may be used by the law enforcement officer for the

could not be considered in the determination of whether there was probable cause for the arrest. At the motion hearing Judge Ullsvik sustained an objection to the officer's testimony regarding the HGN test on the grounds that the testimony was not admissible without independent expert testimony establishing the validity of the test. Nonetheless, the judge held that the officer had the requisite amount of probable cause to request the PBT. He explained that the definition of "probable cause" varies in relation to the liberty interests involved at the various stages of governmental interaction with the accused. The judge concluded that the officer had sufficient probable cause for the purpose of continuing the investigation by requesting the PBT.

¶ 14. The court of appeals reversed, concluding that the legislature intended that an officer must have probable cause to arrest a person for violation of the relevant laws before requesting a PBT, and that before administering the PBT, the officer lacked probable cause to arrest the defendant.

## II.

¶ 15. We now consider the petitioner Jefferson County's argument that the level of probable cause required before an officer may request a PBT under Wis. Stat. § 343.303 is a lesser amount of proof than probable cause for arrest. The case turns on interpretation of the first sentence of § 343.303, which states that "[i]f a law enforcement officer has probable cause to

purpose of deciding whether or not the person shall be arrested. . .and whether or not to require or request chemical tests as authorized under s. 343.305(3). The result of the preliminary breath screening test shall not be admissible in any. . .proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested. . .under s. 343.305(3).

believe that the person is violating or has violated s. 346.63(1). . .," the officer, prior to an arrest, may request the person to provide a PBT.[7]

¶ 16. The court of appeals held that the legislature intended by this language to require an officer to have probable cause to arrest before requesting a PBT. *Renz*, 222 Wis. 2d at 443. The court based this holding in part on its conclusion that case law so clearly defines "probable cause" in this context to mean "probable cause to arrest," that the legislature would have indicated if it intended some other standard to apply. *Id.* The court also concluded that legislative history supports this interpretation. *Id.*

¶ 17. The petitioner argues that this interpretation is contrary to the intent of the legislature and cannot be reconciled with the rest of Wis. Stat. § 343.303. In support of this argument, the petitioner insists that under this interpretation other provisions of the statute do not make sense and points to case law establishing that "probable cause" refers to different degrees of proof at different stages of the proceedings.

¶ 18. Statutory interpretation is a question of law that we review *de novo*. *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997); *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997). The objective of statutory interpretation is to discern and give effect to the intent of the legislature. *Lake City*, 207 Wis. 2d at 162. To do so, we look first to the plain language of the statute. *Id.* When the statutory language clearly and unambiguously sets forth the legislative intent, we may not look beyond the

---

[7] While this case only involves violations of Wis. Stat. § 346.63(1), Wis. Stat. § 343.303 applies to suspected violations of Wis. Stat. §§ 346.63(1), 346.63(2m), 346.63(2), 346.63(6), 940.25, or 940.09.

language to determine its meaning. *Id.* at 163. However, if the statutory language is ambiguous or unclear, we may examine the statute's history, scope, context, subject matter, and objective in our efforts to ascertain the legislative intent. *Id.*

■

¶ 19. · With these principles in mind, we examine the language of Wis. Stat. § 343.303. A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Setagord*, 211 Wis. 2d at 406; *State ex rel. Neelen v. Lucas*, 24 Wis. 2d 262, 267, 128 N.W.2d 425 (1964). The provision at issue in this case is the language in the first sentence of the statute requiring a law enforcement officer to have "probable cause to believe" that a person has violated the law before requesting a PBT. As the court of appeals noted, this sentence could reasonably be understood in different senses. *Renz*, 222 Wis. 2d at 439.

¶ 20. First, upon reading the first sentence of Wis. Stat. § 343.303, a reasonable person could conclude that "probable cause to believe" means "probable cause for arrest," because case law commonly defines probable cause for an arrest as proof that would lead a reasonable police officer to believe that a person probably committed a crime. *See id.*

■

¶ 21. At the same time, the petitioner's interpretation, that "probable cause to believe" means something less than probable cause for arrest, is also reasonable, especially when the first sentence is read together with the next two sentences. Ambiguity may arise from the words of the statutory provision itself, or from their interaction with and relation to other provisions of the statute and other statutes. *State v. Sweat,*

208 Wis. 2d 409, 416, 561 N.W.2d 695 (1997). The first sentence of Wis. Stat. § 343.303 provides that an officer may request a PBT when the officer has "probable cause to believe" that the driver has violated the laws against OWI.[8] The second sentence provides that an officer may use the PBT result to help determine whether to arrest a driver.[9] The third sentence then provides that the PBT result is only admissible in proceedings to establish probable cause for an arrest or proper grounds for requiring a subsequent chemical test.[10]

---

[8] The first sentence of § 343.303 reads in full:

If a law enforcement officer has probable cause to believe that the person is violating or has violated s. 346.63(1) or (2m) or a local ordinance in conformity therewith, or s. 346.63(2) or (6) or 940.25 or s. 940.09 where the offense involved the use of a vehicle, or if the officer detects any presence of alcohol, a controlled substance or other drug, or a combination thereof, on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe that the person is violating or has violated s. 346.63(7) or a local ordinance in conformity therewith, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose.

[9] The second sentence of § 343.303 reads:

The result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of s. 346.63(1), (2m), (5) or (7) or a local ordinance in conformity therewith, or s. 346.63 (2) or (6), 940.09(1) or 940.25 and whether or not to require or request chemical tests as authorized under s. 343.305(3).

[10] The third sentence of § 343.303 reads:

The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under s. 343.305(3).

¶ 22. Thus, the overall scheme of these provisions is to allow officers to use the PBT as a tool to determine whether to arrest a suspect and to establish that probable cause for an arrest existed, if the arrest is challenged. This scheme makes the most sense if the officer may request a PBT before establishing probable cause for an arrest, to help determine whether there are grounds for arrest. A reader therefore could easily conclude that "probable cause to believe" must mean something less than probable cause for arrest.

¶ 23. This interpretation is also reasonable because it is well established in our case law that "probable cause" does not refer to a uniform degree of proof, but instead varies in degree at different stages of the proceedings. For example, the probable cause required for issuance of a warrant is less than the probable cause needed to bind a defendant over for trial after a preliminary hearing. *State v. Knoblock*, 44 Wis. 2d 130, 134, 170 N.W.2d 781 (1969); *State v. Berby*, 81 Wis. 2d 677, 683, 260 N.W.2d 798 (1977); *State v. Dunn*, 121 Wis. 2d 389, 396, 359 N.W.2d 151 (1984). *See also Taylor v. State*, 55 Wis. 2d 168, 173, 197 N.W.2d 805 (1972)(noting that a preliminary hearing requires more evidence than other preliminary probable cause determinations) *and State v. Wille*, 185 Wis. 2d 673, 682, 518 N.W.2d 325 (Ct. App. 1994)(holding that the level of proof needed to establish probable cause at a hearing on the revocation of a driver's license is less than that needed to establish probable cause at a suppression hearing). It is therefore reasonable to interpret "probable cause to believe" in the first sentence of Wis. Stat. § 343.303 to mean a lesser degree of probable cause than that required to justify an arrest.

¶ 24. Because the statute is subject to these conflicting, reasonable interpretations, it is ambiguous. We therefore must examine the context, history, and purpose of the statute in order to determine the legislative intent.

## III.

¶ 25. We first make a closer examination of the statutory language in its context. In construing the statute, we must avoid interpretations that yield absurd or unreasonable results. *Lake City*, 207 Wis. 2d at 162. Courts must also attempt to give effect to every word of a statute, so as not to render any portion of the statute superfluous. *State ex rel. Reimann v. Circuit Court for Dane County*, 214 Wis. 2d 605, 619, 571 N.W.2d 385 (1997); *Lake City*, 207 Wis. 2d at 162. The petitioner argues that, reading the first sentence in context with the rest of the statute, the court of appeals' interpretation creates unreasonable results and renders the third sentence of Wis. Stat. § 343.303 superfluous.

¶ 26. The petitioner persuasively argues that the interpretation the defendant urges us to adopt would severely restrict the application of the second sentence of Wis. Stat. § 343.303. As noted above, the second sentence provides that an officer may use the PBT result to help decide whether to arrest a suspect for OWI. § 343.303. This provision seems to presume that an officer will be able to request the PBT during the process of determining whether probable cause for arrest exists, rather than only after probable cause for arrest has been established. After probable cause for arrest exists, the PBT is not really needed "for the purpose of

deciding whether or not the person shall be arrested." Thus, the defendant's interpretation of the first sentence seems to unreasonably restrict the commonsense meaning of the second sentence.

¶ 27. The defendant argues that under this interpretation the second sentence still makes sense because an officer who already has probable cause for an arrest may decide to request a PBT before actually arresting the suspect. Although this may occasionally be true, as a practical matter, it seems unlikely. If the officer must have already established probable cause for an arrest without the PBT, the officer will save time and resources by arresting the suspect and administering the implied consent test authorized upon arrest under Wis. Stat. § 343.305(2)–(3). In reality, the effect of this interpretation would be to restrict the usefulness of the PBT in a manner that conflicts with the commonsense meaning of the second sentence.

¶ 28. Even worse, this interpretation of the first sentence in effect writes part of the third sentence out of the statute. The third sentence provides in part that the PBT result will be admissible in proceedings to establish that probable cause existed for an arrest. Wis. Stat. § 343.303. Yet, under the defendant's interpretation, the PBT result cannot be admitted until after probable cause for arrest has already been established. At that point, the PBT evidence would be cumulative and unnecessary to establish probable cause for the arrest. Thus, the PBT result would, in fact, not be admissible to show that there was probable cause for the arrest. This result renders part of the third sentence meaningless.

¶ 29. Thus, under the defendant's interpretation, an officer could only request a PBT after already having established probable cause for an arrest, even

though the statute explicitly provides that the officer may use the PBT result in determining whether to make an arrest. Furthermore, before presenting evidence of the PBT result to rebut a challenge to probable cause for an OWI arrest, the petitioner would have to prove that probable cause to arrest existed before the PBT was administered, even though the statute clearly states that the PBT result will be admissible "to show probable cause for an arrest, if the arrest is challenged." Wis. Stat. § 343.303.

¶ 30. Basic principles of statutory construction disfavor an interpretation of the first sentence that yields such unreasonable results. The court of appeals acknowledged that its construction "limits the conditions under which a PBT may be requested and undercuts the use of a PBT to establish probable cause to arrest," *Renz*, 222 Wis. 2d at 442, but determined that "[t]his circularity is a necessary but perhaps unsatisfactory result" that the legislature may wish to consider. *Id.* at 447 n.22. The court concluded that its construction was nonetheless the only reasonable one, *id.* at 447, because it believed that "probable cause" in this context was clearly defined in case law to mean "probable cause to arrest" and that the legislative history supported this interpretation, *id.* at 443.

¶ 31. We do not agree that case law and legislative history compel this construction of Wis. Stat. § 343.303. Instead, we conclude that our case law establishes that "probable cause to believe" has different meanings at different stages of criminal proceedings. Furthermore, the legislative history shows that the legislature intended to allow an officer to request a PBT as a screening test before establishing probable cause for an OWI arrest.

¶ 32. Probable cause is not an unvarying standard because "each decision at the various stages of the proceedings is an independent determination with the varying burdens of proof." *Knoblock*, 44 Wis. 2d at 134. Thus, the level of proof needed to establish probable cause for an arrest is less than that needed to bind a defendant over for trial after a preliminary examination. *Knoblock*, 44 Wis. 2d at 134; *Taylor*, 55 Wis. 2d at 173. *See also In the Interest of T.R.B.*, 109 Wis. 2d 179, 188–89, 325 N.W.2d 329 (1982)(explaining that the requisite degree of probable cause varies with the different function of the probable cause determination at different stages of proceedings) *and State v. Dunn*, 121 Wis. 2d at 396–98 (discussing the function of the probable cause determination at a preliminary hearing as compared to the other stages of proceedings). Similarly, the level of proof needed to establish probable cause at a hearing on the revocation of a driver's license is less than that needed to establish probable cause at a suppression hearing. *State v. Wille*, 185 Wis. 2d at 682.

¶ 33. This is true despite the fact that nearly identical language, "probable cause to believe" that a person has violated the law, describes the probable cause inquiry at different stages of proceedings. *Cf.* Wis. Stat. § 343.305(9)(a) (providing that at a refusal hearing, the issue is "whether the officer had probable cause to believe the person" was violating the OWI laws) *with* Wis. Stat. § 968.04 (providing that an arrest warrant may issue when there is "probable cause to believe that an offense has been committed and that the accused has committed it") *and* Wis. Stat. § 970.03(1) (providing that the purpose of a preliminary examination is to determine whether there is "probable cause to believe a felony has been committed by the defendant"). Thus, the same language, "probable

308

cause to believe," indicates different levels of proof at different stages of proceedings. It is therefore reasonable to conclude that the legislature intended the language "probable cause to believe" in the first sentence of Wis. Stat. § 343.303 to mean a level of proof appropriate to that stage in the proceedings and less than that required to establish probable cause for arrest.

¶ 34. For these reasons, we are not persuaded by the defendant's argument that because the legislature created a lower proof requirement for PBT tests of commercial drivers under Wis. Stat. § 343.303, "probable cause to believe" must mean "probable cause for arrest." With regard to commercial drivers, an officer may request a PBT upon the detection of "any presence" of an intoxicant or if the officer has "reason to believe" that the driver is operating a vehicle while intoxicated. § 343.303. Thus, the legislature authorizes police officers to request a commercial driver to submit to a PBT with a minimum of suspicion.

¶ 35. It does not follow from this that "probable cause to believe" must mean "probable cause for arrest." There is a great degree of difference between the minimum of suspicion indicated by the language "reason to believe" and "any presence" of alcohol and the degree of proof required to establish probable cause for arrest. As we have just explained, "probable cause to believe" is not a uniform standard, but varies in degree at different stages of criminal proceedings. In light of this, we are not persuaded that because Wis. Stat. § 343.303 describes a lower standard of proof for PBTs of commercial drivers, "probable cause to believe" must mean "probable cause for arrest." Instead, it appears that the legislature intended "probable cause to believe" to mean something between these two levels

of proof, more proof than "any presence" of an intoxicant but less than probable cause for arrest.

¶ 36. This interpretation of "probable cause to believe" is also consistent with the PBT's place in the process of an OWI investigation. First, an officer may make an investigative stop if the officer "reasonably suspects" that a person has committed or is about to commit a crime, Wis. Stat. 968.24,[11] or reasonably suspects that a person is violating the non-criminal traffic laws, *State v. Griffin*, 183 Wis. 2d 327, 333–34, 515 N.W.2d 535 (Ct. App. 1994). After stopping the car and contacting the driver, the officer's observations of the driver may cause the officer to suspect the driver of operating the vehicle while intoxicated. If his observations of the driver are not sufficient to establish probable cause for arrest for an OWI violation, the officer may request the driver to perform various field sobriety tests. The driver's performance on these tests may not produce enough evidence to establish probable cause for arrest. The legislature has authorized the use of the PBT to assist an officer in such circumstances. If the person stopped is a commercial driver, the officer may request a PBT upon the detection of "any presence" of an intoxicant or if the officer has "reason to believe" the driver has been operating the vehicle while

---

[11] Wisconsin Stat. § 968.24 codifies the "reasonable suspicion" standard articulated by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 22 (1968) and adopted by this court in *State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972). *See State v. Waldner*, 206 Wis. 2d 51, 55, 556 N.W.2d 681 (1996). *Terry* and *Chambers* hold that "a police officer may in appropriate circumstances temporarily stop an individual when, at the time of the stop, he or she possesses specific and articulable facts which would warrant a reasonable belief that criminal activity was afoot." *Id.*

intoxicated. Wis. Stat. § 343.303. For non-commercial drivers, the officer may request a PBT if there is "probable cause to believe" that the person has been violating the OWI laws. § 343.303. If the driver consents to the PBT, the result can assist the officer in determining whether there is probable cause for the arrest. § 343.303. If under the facts there are reasonable grounds to believe that the person has violated the OWI laws, the officer may arrest the driver under Wis. Stat. § 345.22[12] or Wis. Stat. § 968.07(1)(d).[13] Finally, to bind the defendant over after a hearing, the authorities will need to show probable cause that is greater than that required for the arrest, but less than the guilt beyond a reasonable doubt that must be proven before conviction. *Dunn*, 121 Wis. 2d at 396 (citing *Berby*, 81 Wis. 2d at 683).

¶ 37. In sum, we find that case law does not compel the conclusion that the legislature must have intended "probable cause to believe" to mean probable cause for an arrest.[14]

---

[12] Wisconsin Stat. § 345.22 provides that "[a] person may be arrested without a warrant for the violation of a traffic regulation if the traffic officer has reasonable grounds to believe that the person is violating or has violated a traffic regulation."

[13] Wisconsin Stat. § 968.07(1)(d) provides that an officer may arrest a person when "[t]here are reasonable grounds to believe that the person is committing or has committed a crime."

[14] The defendant also raises a constitutional challenge, arguing that under *Schmerber v. California*, 384 U.S. 757 (1966) and *County of Milwaukee v. Proegler*, 95 Wis. 2d 614, 291 N.W.2d 608 (Ct. App. 1980), the PBT is a warrantless search and seizure and may only be conducted incident to a lawful arrest or with probable cause for arrest. However, consent is an established exception to the warrant and probable cause requirements. *State v. Douglas*, 123 Wis. 2d 13, 18, 365 N.W.2d

¶ 38. We likewise find nothing in the legislative history that compels the interpretation of the statute that the defendant urges us to adopt. The Wisconsin legislature first authorized a preliminary breath test in 1977 as part of Assembly Bill 1 of the November 1977 Special Session. 1977 A.B. 1; § 7, ch. 193, Laws of 1977. That original PBT statute provided "[i]f a law enforcement officer has probable cause to believe that a person has violated s. 346.63(1). . ., the officer may request the person, prior to arrest and issuance of a citation, to take a preliminary breath test. . . ." Wis. Stat. § 343.305(2)(a)(1977–78)(repealed 1981).

¶ 39. Refusal to take this test subjected the driver to license revocation, unless the driver consented to a post-arrest chemical test. Wis. Stat. § 343.305(2)(a), (9)(c)(1977–78)(repealed 1981). The Legislative Reference Bureau's (LRB) analysis of the bill indicated that it authorized officers "to request persons suspected of driving under the influence of an intoxicant to submit to a preliminary breath test." 1977 A.B. 1.

¶ 40. In 1981, as part of the budget bill, the legislature enacted amendments to the OWI laws that, among other changes, removed the PBT from Wis. Stat. § 343.305 and created Wis. Stat. § 343.303. §§ 1568b and d, ch. 20, Laws of 1981. Senator Adelman first introduced substantially similar changes in Senate Bill 310, which was never enacted. 1981 S.B. 310. The LRB analysis of Senate Bill 310 stated, in relevant part:

PRELIMINARY BREATH TEST

This proposal retains the present option for law enforcement officers to use a *preliminary* breath

---

580 (1985). Since the defendant in this case consented to submit to the PBT, we need not reach this issue.

> test to screen out potential violators. The results will still be inadmissible in any O.W.I. or related case, but the officer need not give a written notice to the person regarding the test. There will be no penalty for refusing to take a *preliminary* breath test.

1981 S.B. 310 (emphasis in original).

¶ 41. Thus, both the 1977 and the 1981 LRB analyses indicate that the legislature intended the PBT to function as a preliminary screening tool, to be used by an officer during investigation of a person suspected of an OWI violation.

¶ 42. Likewise, the language that the legislature chose to describe the test confirms that it intended the PBT to function as a screening tool to be used prior to arrest. The legislature entitled Wis. Stat. § 343.303 "Preliminary breath screening test," and the text of the statute also describes the test as a "preliminary breath screening test." The word "preliminary" means "[p]rior to or preparing for the main matter, action, or business; introductory or prefatory." *The American Heritage Dictionary of the English Language* 1429 (3d ed. 1992). Thus, when it described the test as "preliminary," the legislature clearly indicated that it intended the test to be a preparation for something else. It seems obvious that that something else—the main matter—is the arrest itself.

¶ 43. The PBT will not function as a preliminary screening tool if an officer cannot request a PBT until after probable cause for the arrest has already been established. The LRB analyses and the language the legislature chose to describe the test therefore strongly suggest that the legislature intended to authorize an officer to request a PBT before establishing probable cause for arrest.

¶ 44. It is true that during the drafting process in 1981, "reason to believe," LRB Drafting Record to 1981 S.B. 310, Draft of Senate Substitute Amendment 1 to 1981 S.B. 310 (LRBs0150/1), and "reasonably sus- pects," LRB Drafting Record to S.A. 125 to 1981 A.B. 66, (LRBb1636/1), were proposed as substitutes for "probable cause to believe." However, this fact does not persuade us that the legislature must have intended "probable cause to believe" to mean "probable cause for arrest." As we have explained, "probable cause to believe" refers to different degrees of proof at different stages of proceedings. It is therefore reasonable to con- clude that the legislature intended "probable cause to believe" to mean a level of proof greater than the rea- sonable suspicion necessary to justify an investigative stop but less than that required to establish probable cause for arrest.

¶ 45. We also note that the 1981 amendments to the laws against driving while intoxicated separated the PBT provision, Wis. Stat. § 343.303, from the implied consent test provision, Wis. Stat. § 343.305, and removed any penalty for refusing the PBT. *Cf.* Wis. Stat. § 343.305(2)(a), (9)(c)(1979–80)(repealed 1981) *with* Wis. Stat. § 343.303 (1981). The fact that the legis- lature removed the penalty for refusing to take a PBT is further evidence that the legislature intended the PBT to be a preliminary, investigative test. Moreover, since § 343.305 authorizes chemical tests of drivers upon arrest for OWI violations, § 343.305(2)–(3), the PBT is of little use to law enforcement officers after they have established probable cause for arrest.

¶ 46. Furthermore, the legislature's explicit statement of the purpose of the 1981 act supports the petitioner's interpretation of the statute. The provision states:

(13) OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF INTOXICANT OF CONTROLLED SUBSTANCE

(a) . . .

(b) The legislature intends by passage of this act:

1. To provide maximum safety for all users of the highways of this state.

2. To provide penalties sufficient to deter the operation of motor vehicles by persons who are intoxicated.

3. To deny the privileges of operating motor vehicles to persons who have operated their motor vehicles while intoxicated.

4. To encourage the vigorous prosecution of persons who operate motor vehicles while intoxicated.

5. To promote driver improvement, through appropriate treatment or education or both, of persons who operate motor vehicles while intoxicated.

§ 2051(13)(b), ch. 20, Laws of 1981. These purposes appear to be best served if an officer can request a PBT while investigating whether a driver has violated the OWI laws, before probable cause for arrest has been established. As stated above, the petitioner's interpretation maximizes highway safety, because it makes the PBT an effective tool for law enforcement officers investigating possible OWI violations. It also encourages vigorous prosecution of OWI violations, because it allows PBT results to be used to show the existence of probable cause for an arrest.

¶ 47. We therefore determine that neither case law nor legislative history compels us to interpret the first sentence of Wis. Stat. § 343.303 in a manner that

undermines the meaning of the second and third sentences of the statute. Instead, we conclude that the context, history and purpose of the statute all suggest that "probable cause to believe" refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop, and greater than the "reason to believe" that is necessary to request a PBT from a commercial driver, but less than the level of proof required to establish probable cause for arrest. Under this construction, the second and third sentences function sensibly. An officer may request a PBT to help determine whether there is probable cause to arrest a driver suspected of OWI, and the PBT result will be admissible to show probable cause for an arrest, if the arrest is challenged. The context, history, and purpose of the statute strongly support this reasonable construction.

## IV.

¶ 48. We now turn to the application of this standard to the facts of the case. We uphold the trial court's findings of fact unless they are clearly erroneous. *State v. Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). Whether those facts satisfy the statutory standard of probable cause is a question of law we review *de novo. Id.* at 137–38.

¶ 49. The defendant exhibited several indicators of intoxication. His car smelled strongly of intoxicants. He admitted to drinking three beers earlier in the evening. During the one-legged stand test, he was not able to hold his foot up for thirty seconds, and he restarted his count at 10 although he stopped at 18. He appeared unsteady during the heel-to-toe test, left a space between his steps, and stepped off of the imaginary line. He was not able to touch the tip of his nose with

his left finger during the finger-to-nose test. On the other hand, his speech was not slurred, and he was able to substantially complete all of the tests.

¶ 50. The officer was faced with exactly the sort of situation in which a PBT proves extremely useful in determining whether there is probable cause for an OWI arrest. We conclude that the officer had the required degree of probable cause to request the defendant to submit to a PBT.[15]

¶ 51. In summary, we conclude that the legislature intended "probable cause to believe" in the first sentence of Wis. Stat. § 343.303 to refer to a quantum of proof that is greater than the reasonable suspicion necessary to justify an investigative stop, and greater than the "reason to believe" necessary to request a PBT from a commercial driver, but less than the level of proof required to establish probable cause for arrest. Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for reinstatement of the judgment of conviction.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

¶ 52. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I agree with the majority opinion that if Wis. Stat. § 343.303 (1993–94) is to have meaning in non-commercial motor vehicle cases, the phrase "probable cause to believe" used in that section

---

[15] Because we conclude that the officer had sufficient probable cause to request the PBT even without the HGN test results, we do not need to reach the issue of whether those test results were properly excluded.

must mean something different from the same phrase "probable cause to believe" used in § 968.04 to govern the issuance of an arrest warrant. I conclude, in contrast to the standard set forth in the majority opinion, that an officer may request a preliminary breath screening test (PBT) of a driver of a non-commercial motor vehicle under Wis. Stat. § 343.303 when the driver exhibits several indicators of being under the impairment of intoxicants.

¶ 53.　I write for two reasons. First, I do not think the majority opinion sets forth a workable standard to determine what information a police officer must have to request a driver of a non-commercial motor vehicle to submit to a PBT. The standard set forth in the majority opinion is that "probable cause to believe" refers "to a quantum of proof that is greater than the reasonable suspicion necessary to justify an investigative stop, and greater than the 'reason to believe' necessary to request a PBT from a driver of a commercial motor vehicle, but less than the level of proof required to establish probable cause for arrest." Majority op. at 316. See also maj. op. at 309, 317. This standard does not sufficiently help law enforcement officers or the courts to determine whether a law enforcement officer has sufficient facts to satisfy § 343.303. Indeed the majority opinion does not even attempt to apply this standard to the evidence in the present case. Rather, the majority opinion analyzes the record to determine whether the defendant exhibited several indicators of intoxication in resolving whether the officer had probable cause to request the defendant to submit to a PBT. Majority op. at 316–17.

¶ 54.　Second, I write to express my concern about this court's evolving jurisprudence that "probable cause to believe" requires varying degrees of evidence

depending on the stage of the proceedings. Majority op. at 304, 308, 309. The majority opinion declares that "there is a great degree of difference between the minimum of suspicion indicated by the language 'reason to believe' and 'any presence of alcohol' and the degree of proof required to establish probable cause for arrest." Majority op. at 309.

¶ 55. As I see it, the degrees of proof required for various "probable cause" standards may, in real life, be indistinguishable. Although people on the planet may be connected by no more than six degrees of separation, as the popular play and motion picture demonstrate, I am not sure what degrees of separation exist in the various manifestations of probable cause. I am sure, however, that the degrees of separation, if any, are crammed on a narrow spectrum.[1]

¶ 56. Our case law supports the conclusion that the most demanding quantum of proof, the probable cause necessary to bind a defendant over for trial, is not very demanding at all. The magistrate must determine only whether under any plausible facts the accused probably committed a felony. *State v. Dunn*, 121 Wis. 2d 389, 397–98, 357 N.W.2d 151 (1984).

¶ 57. Furthermore our case law demonstrates that the varying degrees of proof are in fact very similar. In *State v. Taylor*, 55 Wis. 2d 168, 173, 197 N.W.2d 805 (1972), the court noted that "while a preliminary hearing may require more by the way of evidence than other preliminary determinations of probable cause [citations omitted], these pretrial proceedings are similar in that they are all concerned with the practical and

---

[1] A spectrum is defined as "a range of values of a quantity or set of related quantities." *The American Heritage Dictionary of the English Language* 1731 (3rd ed. 1992).

nontechnical probabilities of everyday life in determining the existence of probable cause."

¶ 58. I have appended a diagram to this concurrence to demonstrate the spectrum of probable cause determinations. The diagram is not, however, an exact representation of all the varying degrees of probable cause determinations. Some probable cause determinations may be missing. Furthermore, I am unsure of the placement on the spectrum of all the determinations that are shown. For example, the majority opinion does not tell us where the quantum of proof required in this case fits in comparison with the quantum of proof needed to issue a search warrant (see note #5 in the diagram) and the quantum of proof needed to revoke an individual's driver's license (see note #6 in the diagram).

¶ 59. Because the most stringent interpretation of probable cause (the bindover for trial) requires only a "plausible account of the defendant's commission of a felony," this case raises the question of the usefulness of our jurisprudence regarding degrees of proof of probable cause.

¶ 60. For the reasons stated, I concur in the mandate.

¶ 61. I am authorized to state that JUSTICE ANN WALSH BRADLEY joins this concurrence.

**DIAGRAM**

**Degrees of Probable Cause**

—— Probable cause to bind over for trial (see Note #1 below)

—— Probable cause to approve issuance of criminal complaint (see Note #2 below)

—— Probable cause to issue arrest warrant (see Note #3 below)

—— Probable cause for warrantless arrest (see Note #4 below)

—— Probable cause to issue search warrant (see Note #5 below)

—— Probable cause at driver's license revocation hearing (see Note #6 below)

—— **THIS CASE:** Probable cause to request a PBT from a driver of a non-commercial motor vehicle (see Note #7 below)

—— "Any reason to believe" required to request a PBT from a driver of a commercial motor vehicle (see Note #8 below)

—— Reasonable suspicion for investigative stop (see Note #9 below)

321

## NOTES TO THE PROBABLE CAUSE DIAGRAM

**1. Bind Over.** "A defendant may be bound over for trial when the evidence presented at the preliminary hearing is sufficient to support a reasonable inference that the defendant probably committed a felony." *State v. Leist*, 141 Wis. 2d 34, 40, 414 N.W.2d 45 (Ct. App. 1987). ". . .[P]robable cause at a preliminary hearing is satisfied [and the defendant can thus be bound over for trial] when there exists a believable or plausible account of the defendant's commission of a felony." *State v. Dunn*, 121 Wis. 2d 389, 397–98, 359 N.W.2d 151 (1984); *See also* Wis. Stat. § 970.03(1)(1997–98).

"The distinction between plausibility and credibility may be fine; the distinction is one of degree." *Dunn*, 121 Wis. 2d at 397. A judge does not delve into credibility of a witness. *Vigil v. State*, 76 Wis. 2d 133, 144, 250 N.W.2d 378 (1977).

The same principles governing preliminary hearings in felony prosecutions also apply to probable cause hearings held pursuant to Wis. Stat. § 980.04(2) (1995–96) to determine whether a defendant is a sexually violent person. *State v. Watson*, 227 Wis. 2d 167, 201–05, 595 N.W.2d 403 (1999).

The preliminary hearing standard also applies to probable cause hearings regarding involuntary mental commitment under Chapter 51 of the statutes. *Watson*, 227 Wis. 2d at 201 (referring to Wis. Stat. § 51.20(7)(1995–96)).

**2. Criminal Complaint.** Pursuant to Wis. Stat. § 968.03 (1997–98) if a judge does not find "probable cause to believe that an offense has been committed or that the accused has committed it," the judge shall indorse such finding on the complaint.

322

"A complaint must state facts sufficient in themselves or admitting to reasonable inferences which are sufficient in themselves or admitting to reasonable inferences which are sufficient to establish probable cause. . . .The term, 'probable cause,' contemplates the existence of facts and circumstances which would incite an honest belief in a reasonable man, acting under all the circumstances, that the charges made are true. A complaint is sufficient if a fair-minded magistrate could reasonably conclude that the facts alleged justify further criminal proceedings and that the charges are not merely capricious." *State v. Becker*, 51 Wis. 2d 659, 662–63, 188 N.W.2d 449 (1971).

"The test under Wisconsin law of the sufficiency of the complaint is one of 'minimal adequacy, not in a hypertechnical but in a common sense evaluation, in setting forth the essential facts establishing probable cause.' " *T.R.B. v. State*, 109 Wis. 2d 179, 189, 325 N.W.2d 329 (1982) (quoting *State v. Olson*, 75 Wis. 2d 575, 580, 250 N.W.2d 12 (1977)).

In comparative terms, "the degree of probable cause required for a bindover is greater than that required to support a complaint." *T.R.B. v. State*, 109 Wis. 2d at 188.

The standard applied to a complaint may be the same as the standard set forth in notes #3 and #4 below. *State v. Olson*, 75 Wis. 2d at 583; *State ex rel. Pflanz v. County Court for Dane County*, 36 Wis. 2d 550, 554–57, 153 N.W.2d 559 (1967); *State ex rel. White v. Simpson*, 28 Wis. 2d 590, 594–95, 137 N.W.2d 391 (1965).

**3. Arrest Warrant.** Pursuant to Wis. Stat. § 968.04 (1997–98), if it appears from the complaint and accompanying affidavits that there is probable cause to believe that an offense has been committed and that

the accused committed it, the judge shall issue a warrant for the arrest of the defendant.

"Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime. . . .It is only necessary that the information lead a reasonable officer to believe that guilt is more than a mere possibility, and it is well established that the belief may be predicated in part upon hearsay information." *State v. Paszek*, 50 Wis. 2d 619, 624–25, 184 N.W.2d 836 (1971).

In comparative terms, "the probable cause needed to be shown to issue a criminal warrant is less than the probable cause needed to be shown to bind over a defendant for trial after a preliminary hearing." *State v. Knoblock*, 44 Wis. 2d 130, 134, 170 N.W.2d 781 (1969). See also *State v. Berby*, 81 Wis. 2d 677, 683, 260 N.W.2d 798 (1977).

The standard applicable to an arrest warrant may be the same standard as set forth in note #2 above. *State v. Olson*, 75 Wis. 2d 575, 583, 250 N.W.2d 12 (1977); *State ex rel. Pflanz v. County Court for Dane County*, 36 Wis. 2d 550, 554–57, 153 N.W.2d 559 (1967); *State ex rel. White v. Simpson*, 28 Wis. 2d 590, 594–95, 137 N.W.2d 391 (1965).

The standard applicable to an arrest warrant is the same standard as applicable in note #4 below. *State v. Paszek*, 50 Wis. 2d 619, 627, 184 N.W.2d 836 (1997).

**4. Warrantless Arrest.** A law enforcement officer may arrest a person when "there are reasonable grounds to believe the person is committing or has committed a crime" or violated a traffic regulation. Wis. Stat. § 968.07 (1997–98) (crimes); § 345.22 (1997–98) (traffic violations).

Within 48 hours after being arrested, the person is brought before a magistrate to determine whether there is probable cause to believe an offense was committed by the suspect. See *State v. Koch*, 175 Wis. 2d 684, 698, 499 N.W.2d 152, cert. denied 510 U.S. 880 (1993).

In comparative terms, when a suspect is arrested without a warrant, the same quantum of proof is applicable as is applicable to a suspect arrested with a warrant; see note #3 above. *Loveday v. State*, 74 Wis. 2d 503, 523, 247 N.W.2d 116 (1976).

"The State's burden of persuasion at a suppression hearing [challenging a warrantless arrest] is significantly greater than its burden of persuasion at a refusal [license revocation] hearing" under note #6 below. *State v. Wille*, 185 Wis. 2d 673, 682, 517 N.W.2d 700 (Ct. App. 1994).

**5. Search Warrant.** Before issuing a search warrant a magistrate must be "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched." *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991) (internal quotations omitted). A deferential standard of review is accorded to the warrant-issuing judge's finding of probable cause. *Higginbotham*, 162 Wis. 2d at 989. An affidavit should be interpreted in a commonsense manner, not in a hypertechnical manner. The defendant must establish that the facts are clearly insufficient to support a finding of probable cause. *Higginbotham*, 162 Wis. 2d at 990–92.

In comparative terms, the quantum of evidence to issue a search warrant is less than that required to

support a bindover for trial at the preliminary examination. *Higginbotham*, 162 Wis. 2d at 989.

**6. Driver's License Revocation.** At a hearing held to revoke a driver's license under Wis. Stat. § 343.305(9)(1997–98), the State must show that the officer had probable cause to believe the driver was under the influence of an intoxicant. "The trial court. . .simply must ascertain the plausibility of a police officer's account". *State v. Nordness*, 128 Wis. 2d 15, 36, 381 N.W.2d 300 (1986). *Nordness*, 128 Wis. 2d at 35, distinguishes between probable cause and probable cause to a reasonable certainty.

**7. Preliminary Breath Screening Test (PBT) Request: Driver of a Non-Commercial Motor Vehicle.** Probable cause to believe under Wis. Stat. § 343.303 (1993–94)(requesting a PBT of a driver of a non-commercial motor vehicle) refers to "a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop [note #9 below] and greater than the 'reason to believe' necessary to request a PBT from a driver of a commercial motor vehicle [note #8 below] but less than that required to establish probable cause for arrest [note #3 above]." Maj. op. at 317.

**8. Preliminary Breath Screening Test (PBT) Request: Driver of a Commercial Motor Vehicle.** Pursuant to Wis. Stat. § 343.303 (1993–94) an officer may request that a driver of a commercial motor vehicle take a PBT if the officer "detects any presence of intoxicants" or "has any reason to believe the person" has violated laws prohibiting driving while under the influence of intoxicants.

**9.** <u>**Reasonable Suspicion.**</u> In order to stop a person an officer must be able to articulate specific grounds for having a "reasonable suspicion" that the individual is engaged in criminal activity. See Wis. Stat. § 968.24 (1997–98) and maj. op. at 310 n.11 for a description of the reasonable suspicion standard.

The reasonable suspicion standard was adopted in *Richards v. Wisconsin*, 520 U.S. 385 (1997), in another context. In that case, the U.S. Supreme Court held that before police execute a search warrant without knocking and announcing their presence, the officers must have a "reasonable suspicion," under the circumstances, that knocking would be dangerous or futile or that it would inhibit the effective investigation of the crime. *Richards*, 520 U.S. at 394.