**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 29, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP890-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2022CT150**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

LAUREN DANNIELLE PETERSON,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Sauk County: PATRICIA A. BARRETT, Judge. *Reversed*.

¶1 GRAHAM, J.[1] The State appeals a circuit court order granting Lauren Peterson's motion to suppress evidence obtained as a result of a traffic

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

stop. I conclude that the arresting officer had reasonable suspicion to commence an OWI investigation, and further, that he had probable cause to ask Peterson to take a preliminary breath test under WIS. STAT. § 343.303. I therefore reverse the suppression order.

## BACKGROUND

¶2 Peterson was driving at approximately 9:00 p.m. when a law enforcement officer initiated a traffic stop of her vehicle and ultimately arrested her for operating a motor vehicle while intoxicated (OWI)[2] with a minor child in the vehicle. The following summary of facts is derived from the officer's undisputed testimony, which the circuit court appears to have credited, at the hearing on Peterson's motion to suppress.[3]

¶3 The officer testified that he pulled the vehicle over based on an inoperative taillight.[4] The officer observed Peterson and two passengers, an adult and a child, in the vehicle. When Peterson rolled down her window, the officer "noticed an odor of intoxicants emitting from the vehicle" and that Peterson's eyes "were glossy [sic] and bloodshot." When asked, Peterson indicated that she was coming from a relative's house where she had been watching the Bucks game.

---

[2] The Wisconsin Jury Instructions use "OWI" as an umbrella term, which encompasses operating while under the influence of an intoxicant, contrary to WIS. STAT. § 346.63(1)(a), and operating with a prohibited alcohol concentration, contrary to § 346.63(1)(b). I follow the same convention in this opinion.

[3] The officer testified that his squad vehicle was not equipped with a dashboard camera, and he was not wearing a body camera.

[4] Peterson does not challenge the lawfulness of the initial stop.

¶4      The officer asked Peterson if she had been drinking that evening. Peterson responded that she drank two White Claws during the game and had finished the second drink approximately 20 minutes before she was stopped.

¶5      The officer returned to his squad car to run a record check on Peterson's name. Dispatch informed the officer that Peterson's license was valid and that she had one prior OWI conviction.

¶6      At that point, the officer returned to the vehicle and asked Peterson to exit the vehicle. Once she was outside, the officer detected the odor of intoxicants on Peterson's person.

¶7      The officer asked Peterson to perform three standardized field sobriety tests: the Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test. According to the officer, he has been trained to look for six clues of impairment in the HGN test, and Peterson exhibited all six. Peterson performed somewhat better on the walk-and-turn test, exhibiting one of eight clues of impairment. Finally, Peterson exhibited zero of four clues of impairment on the one-leg-stand test. On cross-examination, the officer agreed with Peterson's attorney that there are three different standardized tests "for a reason," that he is trained to "consider [the three tests] in their totality," and that "no one of the standardized … tests is determinative of the decision whether to ask for a PBT or continue on with the OWI investigation."

¶8      Upon completion of the field sobriety tests, the officer asked Peterson to take a preliminary breath test (sometimes referred to as a "PBT"). Peterson complied, and the result showed a blood alcohol level of .103. The officer arrested Peterson.

¶9      Peterson moved to suppress the evidence obtained as a result of the traffic stop.  In her motion, Peterson argued that the officer lacked reasonable suspicion to commence an OWI investigation, and that he also lacked probable cause to ask Peterson to take a preliminary breath test.  Following the hearing, the circuit court determined that the officer had reasonable suspicion to commence the OWI investigation.  However, the court concluded that, following the field sobriety testing, the officer did not have probable cause to ask Peterson to take the preliminary breath test.  Therefore, the court suppressed the evidence.

## DISCUSSION

¶10     In its opening appellate brief,[5] the State challenges the circuit court's conclusion that the officer lacked probable cause to ask Peterson to take a preliminary breath test.  In her response, Peterson argues that the court was right to suppress the evidence based on lack of probable cause to administer a preliminary breath test, and she also argues that the officer lacked reasonable suspicion to commence an OWI investigation, which provides an additional ground for suppression.  I address these challenges to the constitutionality of the stop in chronological order, beginning with the officer's decision to commence an OWI investigation.

---

[5] The State's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs.  See RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbers starting at '1' on the cover").  This rule has recently been amended, see S. Ct. Order 20-07 (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for e-filing.  As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.

## I.

¶11    The officer originally pulled over Peterson's vehicle based on reasonable suspicion of an equipment violation.  To constitutionally extend the mission of the stop to include an OWI investigation, the officer needed reasonable suspicion to believe that Peterson was violating or had violated one of Wisconsin's OWI laws.  ***Rodriguez v. United States***, 575 U.S. 348, 355 (2015); ***County of Jefferson v. Renz***, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999).

¶12    Under Wisconsin law, not every person who has consumed alcoholic beverages prior to operating a motor vehicle has committed an OWI-related offense.  *See* WIS JI—CRIMINAL 2663.  Instead, the law specifically prohibits a person from driving with a prohibited alcohol concentration—which, as relevant here, was .08 or more[6]—or from driving "under the influence of an intoxicant" as that phrase has been defined by Wisconsin cases.[7]

¶13    The parties dispute the moment the OWI investigation commenced. Peterson argues that the officer commenced the OWI investigation when he asked Peterson whether she had been drinking.  She argues that the officer's question constituted an extension of the mission of the stop within the meaning of ***Rodriguez***, 575 U.S. at 355, and that the officer needed to reasonably suspect that she had violated one of Wisconsin's OWI laws before he could ask her that question.  The State, by contrast, argues that the officer's question about drinking

---

[6] WIS. STAT. § 346.63(1)(b); WIS. STAT. § 340.01(46m).

[7] WIS. STAT. § 346.63(1)(a); *see also* WIS JI—CRIMINAL 2663 (being "under the influence" of an intoxicant as that phrase is used in § 346.63(1)(a) means that the "person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle").

was "negligibly burdensome" and therefore not "an extension of the stop." According to the State, the officer did not commence an OWI investigation until he asked Peterson to perform field sobriety testing.

¶14 I need not resolve this dispute between the parties because it is not dispositive. For reasons I now explain, even if I assume that the officer's question about drinking constituted an extension of the mission of the stop within the meaning of *Rodriguez*, I nonetheless conclude that the officer had reasonable suspicion to ask the question.

¶15 Reasonable suspicion is an objective test that examines the totality of circumstances. *State v. Post*, 2007 WI 60, ¶¶13-14, 301 Wis. 2d 1, 733 N.W.2d 634. The test is grounded in common sense—what would a reasonable police officer reasonably suspect, in light of the officer's training and experience, based on the totality of facts and circumstances and the reasonable inferences to be drawn therefrom. *Id.*, ¶13. In the context of an OWI investigation, the officer must be able to point to "specific and articulable facts" and "rational inferences from those facts" to reasonably suspect that the person has violated an OWI-related law. *State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990) (citation omitted). Reasonable suspicion is not a high bar, *State v. Genous*, 2021 WI 50, ¶8, 397 Wis. 2d 293, 961 N.W.2d 41; "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause," *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted).

¶16 Here, prior to asking Peterson whether she had been drinking, the officer knew that Peterson had just come from a family gathering, he smelled the odor of intoxicants coming from inside the vehicle, and he observed Peterson's

"glossy" and bloodshot eyes. I conclude that these facts collectively gave rise to reasonable suspicion of an OWI violation, which allowed the officer to commence an OWI investigation. *See **Renz***, 231 Wis. 2d at 316-17 (the odor of intoxicants can be an indicator of intoxication); ***State v. Waldner***, 206 Wis. 2d 51, 58, 556 N.W.2d 681 (1996) (although the odor of alcohol, by itself, may not establish reasonable suspicion that a suspect has committed an OWI, it nevertheless serves as a significant "building block" for reasonable suspicion); ***State v. Kennedy***, 2014 WI 132, ¶¶21-22, 359 Wis. 2d 454, 856 N.W.2d 834 (discussing glassy and bloodshot eyes as a physical indicator of intoxication); ***State v. Tullberg***, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 (glassy and bloodshot eyes may be an indicator of intoxication).

¶17 Peterson's argument to the contrary is not persuasive. She points to the fact that, prior to asking her the question, the officer had been unable to discern whether the odor of intoxicants was coming from Peterson or some other source in the vehicle. Even though the officer was unable to pinpoint the source of the odor, the appearance of Peterson's eyes provided an additional building block that pointed to Peterson as a potential source of the odor, and in turn indicated that she may have been intoxicated. As mentioned, reasonable suspicion is not a high bar, ***Genous***, 397 Wis. 2d 293, ¶8, and here, the reasonable suspicion analysis is not a close call.

## II.

¶18 I now turn to whether the officer had probable cause to ask Peterson to take a preliminary breath test. The pertinent law is found in WIS. STAT. § 343.303 and Wisconsin cases interpreting that statute.

¶19     WISCONSIN STAT. § 343.303 provides that, "[i]f a law enforcement officer has probable cause to believe that [a] person is violating or has violated" one of Wisconsin's OWI-related laws, "the officer, prior to any arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test" using an approved device. Section 343.303 further provides that "[t]he result of this preliminary breath screening test may be used by the … officer for the purpose of deciding whether or not the person shall be arrested" for an OWI-related offense.

¶20     Wisconsin cases recognize that the probable cause needed to ask a person to take a preliminary breath test based on suspicion of an OWI-related offense is not the same as the probable cause needed to arrest a person for that offense. More specifically, the "quantum of proof" needed to ask a person to take a preliminary breath test is "greater than the [reasonable suspicion] necessary to justify an investigatory stop [for OWI], … but less than the level of proof required to establish probable cause for arrest." *Renz*, 231 Wis. 2d at 317 (analyzing WIS. STAT. § 343.303).

¶21     Peterson contends that bloodshot and glassy eyes, alone, do not provide probable cause for a preliminary breath test. Here, however, the officer had observed more than just bloodshot and glassy eyes. He also detected the odor of intoxicants, which at this point he had pinpointed to Peterson's person, and Peterson told him that she had consumed two alcoholic beverages during the game. *Id.* at 316 (suspect's admission to drinking three beers earlier in the evening was one fact that contributed to probable cause). Despite some prevailing views in this state, two drinks is not an insignificant amount of alcohol and, according to charts published by the state department of transportation, that amount might be enough to push some individuals over the legal limit, depending

8

on the person's gender, their weight, whether the person consumed food in addition to drinking alcohol, and how recently the person consumed those drinks.[8]

¶22    In addition to the appearance of Peterson's eyes, her admission to drinking, and the odor of alcohol, we have Peterson's performance on the field sobriety tests. As discussed, Peterson exhibited six of six clues of impairment on the HGN test, one of eight clues on the walk-and-turn test, and zero of four clues on the one-leg-stand test. Peterson contends that her performance should have "dissipated what suspicion the officer could reasonably have," but I disagree. Peterson's performance on the field sobriety tests is at best characterized as ambiguous—it was not a total failure, but she also did not pass with flying colors. The results were not so one-sided that an officer would have no choice but to terminate the investigation and allow Peterson to drive away. *See id.* at 310-11 (acknowledging that a driver's performance on field sobriety tests "may not produce enough evidence to establish probable cause for arrest," and that "[t]he legislature has authorized the use of the PBT to assist an officer in such circumstances").

¶23    Finally, Peterson points to the fact that the officer did not report other common indicators of intoxication, such as slurred speech and loss of balance. Yet, a driver need not be stumbling drunk to violate Wisconsin's OWI laws. I conclude that, like the officer in *Renz*, the officer in this case "was faced with exactly the sort of situation in which a PBT proves extremely useful in determining whether there is probable cause for an OWI arrest." *Id.* at 317.

---

[8] *See* Wis. Dep't of Transportation, *0.08 BAC Law in Wisconsin*, available at https://wisconsindot.gov/Documents/safety/education/drunk-drv/08law.pdf.

¶24     Accordingly, I conclude that the officer had probable cause to ask Peterson to take a preliminary breath test, and that the circuit court erred when it granted her motion to suppress.

*By the Court.*—Order reversed.

This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)4.