STATE of Wisconsin, Plaintiff-Respondent,

v.

Johnny B. GRIFFIN, Defendant-Appellant.†

Court of Appeals

*No. 92–2926–CR. Submitted on briefs December 15, 1993.—Decided March 29, 1994.*

(Also reported in 515 N.W.2d 535.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *William S. Mautner* of *Atinsky, Kahn, Sicula & Teper*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, with *Marguerite M. Moeller*, assistant attorney general.

Before Sullivan, Fine and Cane, JJ.

SULLIVAN, J. The issue in this case is whether the absence of a registration plate, and reasonable inferences that can be drawn from that fact, constitutes reasonable suspicion sufficient to justify an investigatory stop of a motor vehicle. We hold that such a stop is valid.

Johnny B. Griffin appeals from a judgment of conviction for felon in possession of a firearm, § 941.29(2), STATS. Griffin argues that the trial court erroneously denied his motion to suppress evidence of the firearm that was found in his vehicle during a traffic stop and subsequent arrest.[1] Griffin asserts that the initial investigatory stop, based solely upon the fact that Griffin's vehicle bore "license applied for" plates, was not justified by reasonable suspicion. We conclude that the police officer's investigatory stop of Griffin was lawful. Accordingly, we affirm.[2]

The facts are undisputed. City of Milwaukee Police Officer Mark Roots and his partner observed a Dodge Caravan operating in the city on March 20, 1991, about 7:25 a.m. Officer Roots testified as to his sole justification for the stop: "[W]e stopped that vehicle due to the fact that the vehicle did not have registration plates at that time." Instead of registration plates, the van bore

---

[1] On appeal, Griffin does not contest the lawfulness of his arrest assuming the legality of the investigatory stop. The State concedes that if the investigatory stop of Griffin was unlawful, Griffin's subsequent arrest, the search of his vehicle and the seizure of the handgun upon which the conviction is based are unlawful.

[2] *State v. Brackenridge,* 92-1965-CR, involves the same issue presented here. Our certification to the supreme court pursuant to § 808.05(2), STATS., was ordered refused on September 10, 1993.

a sign that read, "license applied for" and contained the name of a car dealer—Ernie von Schledorn, Ltd.

After stopping the vehicle, Officer Roots obtained Griffin's operator's license and, in response to the officer's inquiry about the plates, Griffin produced his purchase contract and other sales papers including von Schledorn's application for registration. Griffin had purchased the van from von Schledorn on March 14, 1991, six days before the stop.

Officer Roots ran a check on Griffin's operator's license and the van's identification number. He learned that the operator's license was issued to Griffin and that the vehicle was registered to him. The officer also learned that two warrants were outstanding naming Griffin, one of which was an unsatisfied commitment for operating an unregistered vehicle and the other was a state warrant for operating a vehicle while the operator's license was suspended. At this point Officer Roots arrested Griffin. A search of the van revealed a .32-caliber handgun in a pouch on the back of the passenger's bucket seat.

The stopping of a motor vehicle is a seizure, which triggers Fourth Amendment protections from unreasonable searches and seizures. *State v. Guzy*, 139 Wis. 2d 663, 675, 407 N.W.2d 548, 554 (1987).[3] "Law enforcement officers may only infringe on the individual's interest to be free of a stop and detention if they have a suspicion grounded in specific, articulable facts and reasonable inferences from those facts, that the

---

[3] An investigatory stop is subject to the limitations of the Fourth and Fourteenth Amendments to the United States Constitution and WIS. CONST. art. I, § 11. *See State v. Guzy*, 139 Wis. 2d 663, 672, 407 N.W.2d 548, 552-53 (1987).

individual has committed a crime." *Id.*[4] The reasonableness of a stop depends upon the facts and circumstances of the situation. *Id.* at 679, 407 N.W.2d at 555. Where the facts are undisputed, the question of whether a stop was valid is a question of law that this court reviews without deference to the trial court's decision. *See State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 388 (1989).

The question on appeal is whether the presence of a "license applied for" sign, rather than registration plates, and the reasonable inferences that can be drawn from that fact, are sufficient to justify the stop of a motor vehicle. Griffin argues that his stop was unlawful because Officer Roots and his partner had no specific or articulable facts, or rational inferences from those facts, sufficient to warrant the intrusion. Officer Roots testified that his reason for stopping Griffin was the lack of registration plates on his van.

Under Wisconsin law, it is unlawful for any person to operate a motor vehicle on a highway unless the vehicle either is registered or a complete application for registration accompanied by the required fee has been delivered or mailed to the Department of Transportation (DOT). Section 341.04(1), STATS. Once the DOT issues registration plates for the vehicle, it is unlawful to fail to display such plates. Section 341.15(3)(a), STATS. The failure to properly register a vehicle, or the failure to properly display issued registration plates, may subject the violator to a forfeiture penalty not to exceed $200. *See* §§ 341.04(3)(a) and 341.15(3), STATS.

---

[4] The Wisconsin legislature has codified this standard in § 968.24, STATS. *State v. Goebel*, 103 Wis. 2d 203, 209, 307 N.W.2d 915, 918 (1981).

Nonetheless, while awaiting the issuance of registration plates, a person who has purchased a vehicle may operate the vehicle "if application for registration . . . and certificate of title has been made." Section 341.04(1)(a), STATS. Though the statutes do not require that the vehicle display proof of application for registration, the purchaser of a vehicle has the option of purchasing a temporary plate, which is valid for sixty days or until the receipt of the permanent plates, whichever occurs first. Section 341.09(2)(c), STATS. A temporary plate issued by the DOT displays identifying information and the date of expiration. Section 341.09(1). The statute further provides, however, "[n]othing in this subsection requires a person who has complied with s. 341.04(1) to obtain a temporary operation plate." Section 341.09(2)(f).

It is undisputed that Griffin had not purchased a temporary plate. The State concedes, however, that Griffin's vehicle was properly registered and that Griffin had complied with the requirements of § 341.04(1), STATS.[5] Griffin had a copy of von Schledorn's statement of application for registration plates and payment of fee and had presented this documentation to Officer Roots. Nonetheless, the State argues that Officer Roots had articulable cause for concern based upon the absence of legally recognized registration plates on Griffin's van.

---

[5] Section 342.16(1)(a), STATS., relating to transfers of vehicles to or from dealers, provides in part: "Upon transferring the vehicle to another person, the dealer shall immediately give to the transferee on a form prescribed by the department a receipt for all title, registration, security interest and sales tax moneys paid to the dealer for transmittal to the department when required." Von Schledorn issued to Griffin a statement evidencing application for registration and payment of the fee.

We agree. The Wisconsin Supreme Court has explained:

> [P]olice officers are not required to rule out the possibility of innocent behavior before initiating a brief stop . . . . [I]f any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry.

*State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763, 766 (1990) (citation omitted).

Officer Roots testified that the only fact he relied upon in making his decision to stop the vehicle was that the vehicle displayed a "license applied for" placard. The inference that Officer Roots drew from this fact was that the placards could easily be affixed to a stolen vehicle. The State presented the testimony of a police detective from the auto theft squad who explained that he had personally recovered many stolen automobiles displaying this type of placard. Officer Roots further explained that because the vehicle did not display either permanent or temporary plates, and therefore displayed no expiration dates, he had no way of knowing how long the van had been operated without plates.

We conclude that Officer Roots and his partner could reasonably question whether Griffin had regular plates which should have been displayed as required by § 341.15, STATS. Without stopping the vehicle, Officer Roots and his partner had no way of knowing that the application for registration had been made and the fee had been paid. The van did not display temporary plates containing identifying information and an expi-

ration date. Thus, unless the officers stopped the vehicle, they had no way of determining whether Griffin had been operating his vehicle without permanent registration plates for six days or for a year. We conclude that these specific and articulable facts justified Griffin's temporary stop and did not violate his right to be free of unreasonable search and seizure.

■

For the foregoing reasons, we conclude that the trial court properly denied Griffin's motion to suppress evidence and we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

FINE, J. (*concurring*). I fully join in the majority opinion, but write separately to express what I believe is the nub of this case.

With exceptions not material here, § 341.04(1), STATS., prohibits the operation of a motor vehicle that is either unregistered or for which a registration application has not been filed. There are only four ways of showing compliance: 1) the display of metal registration plates issued by the Department of Transportation, *see* § 341.15, STATS.; 2) producing the certificate of registration, *see* § 341.11, STATS.; 3) producing proof that the application for registration has been filed, *see* §§ 341.04(1) & 341.08, STATS.; or 4) displaying temporary plates issued by the Department of Transportation, *see* § 341.09, STATS. As the majority points out, cards issued by the dealer (as opposed to temporary-operation plates issued by the Department of Transportation to dealers for sale to customers, *see* § 341.09(2m), STATS.) is not one of these ways. The reason is clear: such cards and their hand-made versions are easy to duplicate or counterfeit, and are undated.

Significantly, the temporary plates issued under § 341.09 must "identify the vehicle for which and the person to whom it is issued," and have an expiration date. Section 341.09(1), STATS.

This was no random stop appropriately condemned by *Delaware v. Prouse*, 440 U.S. 648 (1979). Rather, it was reasonable for the officers to stop Griffin's car to see if, in fact, he had taken the steps necessary to register his van; there was no way for them to ascertain that fact short of a stop because Griffin's van did not display either registration plates or state-issued temporary plates. To declare the officers' good police work here illegal would permit persons to drive unregistered vehicles with impunity.