COURT OF APPEALS
DECISION
DATED AND FILED

March 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP870-CR**

Cir. Ct. No. **2022CM66**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ALAN NATHAN CARROLL, JR. A/K/A U'SI CH-AB,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Washington County: RYAN J. HETZEL, Judge. *Affirmed.*

¶1    NEUBAUER, J.[1] Alan Nathan Carroll, Jr., a/k/a U'si Ch-ab (Ch-ab), appearing pro se, appeals from a judgment entered after a jury found him

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

guilty of resisting or obstructing an officer in violation of WIS. STAT. § 946.41(1). Ch-ab's conviction arose out of a traffic stop that occurred in January 2022. On appeal, he argues that the officer who stopped him violated his constitutional rights in doing so. He also argues that his status as an "Indigenous Aborigine American" relieved him of the obligation to comply with Wisconsin law requiring that motor vehicles operating on Wisconsin roads be registered and display license plates. This court rejects Ch-ab's arguments and affirms.

¶2      Before turning to the facts of this case, this court notes that Ch-ab's briefs and appendix do not comply with several requirements in the Wisconsin rules of appellate procedure. Many of the facts mentioned in his briefs are not supported by citations to the record as required under WIS. STAT. RULE 809.19(d)-(e), and Ch-ab's appendix contains legal arguments and materials that are not part of the record in violation of RULE 809.19(2). Though this court accords some leniency to pro se litigants, they are still required to follow the rules of appellate procedure that apply to parties represented by counsel. *Waushara County v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992). "The right to self-representation is '[not] a license not to comply with relevant rules of procedural and substantive law.'" *Id.* (alteration in original; quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)). Though this court could dismiss Ch-ab's appeal because of the deficiencies in his filings, this court will exercise our discretion to address the merits of his arguments.

¶3      According to the complaint, Ch-ab was pulled over by Officer Alexander Greenberg of the Slinger Police Department after midnight on January 19, 2022. Greenberg stopped Ch-ab's vehicle, which was traveling southbound on I-41, because the vehicle did not have license plates. Greenberg, who was dressed in full police uniform and driving a marked squad car,

approached Ch-ab's vehicle, identified himself, and asked Ch-ab for identification. Ch-ab repeatedly refused to identify himself or provide his driver's license. Greenberg then asked Ch-ab to get out of his vehicle, but Ch-ab repeatedly refused to do so. Additional officers arrived and were ultimately "able to unlock the vehicle door and [Ch-ab] exited the vehicle and was taken into custody."

¶4 The State charged Ch-ab with one misdemeanor count of obstructing an officer in violation of WIS. STAT. § 946.41(1). At several pretrial hearings, Ch-ab refused to enter a plea and declined to allow a lawyer to represent him. He also repeatedly moved to dismiss the charge based on lack of jurisdiction, lack of probable cause, and other grounds. The trial court found probable cause to support the obstruction charge, denied Ch-ab's motions to dismiss, and determined that he had knowingly, intelligently, and voluntarily waived his right to counsel.[2] The court also granted what it construed to be Ch-ab's motion in limine and prohibited the State from introducing evidence that Ch-ab violated the obstruction statute by refusing to identify himself during the encounter with police.

¶5 At trial, Greenberg testified consistently with the complaint that he pulled over Ch-ab's vehicle on I-41 because it was not displaying license plates. Greenberg identified Ch-ab as the only occupant in the vehicle and testified that he told Ch-ab the reason for the stop when he began speaking with him. Greenberg described Ch-ab's demeanor as "[a]rgumentative" and increasingly agitated during the encounter, which prompted Greenberg to call for backup. When a second officer arrived, Greenberg asked Ch-ab to get out of the vehicle so he could

---

[2] Notwithstanding these waivers, Ch-ab asked on the morning trial was to begin that standby counsel be appointed for him. The trial court granted this request and arranged for standby counsel to be present.

confirm that he had a valid driver's license. According to Greenberg, Ch-ab refused to comply and rolled up his vehicle's windows. Unsure of the driver's identity or whether the vehicle was stolen and concerned Ch-ab might flee, the officers put "stop sticks" in front of and behind the vehicle's tires to prevent him from driving away. Two additional officers arrived, one of whom shut down the lane of traffic next to where the vehicle had pulled over. After additional refusals to exit the vehicle, Greenberg was able to reach into the car through the partially rolled down passenger window and unlock the doors, at which point other officers "assisted [Ch-ab] out of the vehicle" and handcuffed him.

¶6       The State also played video of the encounter from Greenberg's squad car. While the video was playing, Greenberg testified that during the stop, he was able to determine that the vehicle was not lawfully registered and that Ch-ab did not have a valid driver's license. Greenberg also confirmed that after he stopped Ch-ab's vehicle, he noticed a "piece of paper or cardboard in place of the license plate," but it was not a lawful plate. Ch-ab elected not to testify. The jury convicted him of the obstruction charge, and he now appeals.

¶7       Ch-ab first argues that Greenberg violated his constitutional right to due process and his "unalienable right to travel on [his] ancestral lands" by stopping and subsequently arresting him. He also contends the police unlawfully confiscated his automobile after his arrest. He characterizes these acts as violations of substantive due process.

¶8       The facts here do not support a substantive due process claim. "Substantive due process forbids a government from exercising 'power without any reasonable justification in the service of a legitimate governmental objective.'" *State v. Quintana*, 2008 WI 33, ¶80, 308 Wis. 2d 615, 748 N.W.2d

447 (quoting *State v. Radke*, 2003 WI 7, ¶12, 259 Wis. 2d 13, 657 N.W.2d 66). "The test to determine if the state conduct complained of violates substantive due process is if the conduct 'shocks the conscience ... or interferes with rights implicit in the concept of ordered liberty.'" *State v. Schulpius*, 2006 WI 1, ¶33, 287 Wis. 2d 44, 707 N.W.2d 495 (quoting *State v. Joseph E.G.*, 2001 WI App 29, ¶13, 240 Wis. 2d 481, 623 N.W.2d 137). This is a demanding standard to meet. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.").

¶9     The behavior of Greenberg and the other officers, as revealed at trial, falls far short of meeting the standard necessary to show a substantive due process violation. According to Greenberg's testimony at trial, which was corroborated by the dash cam video and not disputed in any material respect by other evidence, Greenberg pulled Ch-ab's vehicle over because it did not display a license plate as required by Wisconsin law. *See* WIS. STAT. § 341.15. Greenberg repeatedly asked Ch-ab to produce identification and exit his vehicle; Ch-ab refused to comply with any of those requests. As a result, Greenberg unlocked Ch-ab's vehicle, the officers removed him, and he was arrested and charged with obstructing an officer.

¶10     There is nothing conscience-shocking about any of Greenberg's conduct. He acted lawfully in stopping Ch-ab's vehicle because it did not display valid license plates. *See State v. Griffin*, 183 Wis. 2d 327, 331-33, 515 N.W.2d 535 (Ct. App. 1994) (holding that lack of registration plates on vehicle provided reasonable suspicion for police to stop vehicle). His requests that Ch-ab produce identification and exit the vehicle were likewise proper. *See State v. Smith*, 2018

WI 2, ¶2, 379 Wis. 2d 86, 905 N.W.2d 353 ("[W]hen an officer conducts a valid traffic stop, part of that stop includes checking identification, even if the reasonable suspicion that formed the basis for the stop in the first place has dissipated."); *State v. Brown*, 2020 WI 63, ¶20, 392 Wis. 2d 454, 945 N.W.2d 584 ("When a motorist is 'lawfully detained for a traffic violation … officers may order the driver to get out of the vehicle without violating the Fourth Amendment.'" (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)). Because the trial evidence did not show any conduct by Greenberg or the other officers that was so egregious or outrageous as to shock the conscience, Ch-ab's substantive due process argument fails.

¶11 Ch-ab next contends that the trial court should have suppressed evidence of his interactions with police after the stop because Greenberg lacked "probable cause and reasonable articulable suspicion" to stop him. The Fourth Amendment and its counterpart in article 1, section 11 of the Wisconsin Constitution protect persons "against unreasonable searches and seizures." *See* U.S. CONST. amend. IV; WIS. CONST. art. I, § 11. A traffic stop constitutes a seizure for purposes of these constitutional provisions. *State v. Floyd*, 2017 WI 78, ¶20, 377 Wis. 2d 394, 898 N.W.2d 560. "Reasonable suspicion that a driver is violating a traffic law is sufficient to initiate a traffic stop." *Id.* Here, the undisputed evidence at trial showed that Greenberg had reasonable suspicion to stop Ch-ab's vehicle because he observed Ch-ab driving it on a state highway without license plates as required under Wisconsin law. *See* WIS. STAT. § 341.15; *Griffin*, 183 Wis. 2d at 331-33.

¶12 Ch-ab contends that his vehicle did display "Indigenous Aborigine American automobile plates," but this does not mean that Greenberg lacked reasonable suspicion to stop his car. First, it is apparent from the trial evidence

that these "plates" were not issued by the State (or a federally recognized Indian tribe as permitted under WIS. STAT. § 341.409) because Greenberg testified that they appeared to be made of "cardboard or paper." Moreover, no evidence presented at trial suggested that these "plates" contained the information required under Wisconsin law. *See* WIS. STAT. § 341.12(3)(a)-(c) (requiring that license plates display "[t]he registration number assigned to the vehicle or owner," "[t]he name 'Wisconsin' or abbreviation 'Wis.'," and "[a]n indication of the period for which the specific plate is issued or the date of expiration of registration"); § 341.409(1)(a) (requiring plates issued by Indian tribe or band to "show[] valid registration by the Indian tribe or band"). Finally, Greenberg testified that he did not see the "plates" until after he stopped Ch-ab's vehicle. Because reasonable suspicion existed for the stop, the trial court did not err in allowing evidence of Ch-ab's subsequent interactions with police to be introduced at trial.

¶13 Finally, Ch-ab argues at several points in his briefs that his status as an "Indigenous Aborigine American" relieves him of the obligation to comply with Wisconsin law that requires vehicles to be registered with the state and to display state-issued license plates. Though not entirely clear, Ch-ab appears to contend that he "renounce[d]" his Wisconsin driver's license and license plates and invokes his "constitutional right to travel through [49 U.S.C. § 102(f)(2)(A)-(B)]" as grounds for not having to comply with Wisconsin's vehicle registration, license, and registration plate requirements. He also repeatedly invokes a phrase that appears in Article I, Section 2, Clause 3 of the U.S. Constitution—"excluding Indians not taxed"—in support of his argument that he is not bound by Wisconsin law.

¶14 These arguments furnish no basis to disturb Ch-ab's conviction. "As a general proposition," our supreme court "has concluded that Indians committing

crimes violating state law off of the reservation and not in 'Indian country' are subject to state criminal subject matter jurisdiction." ***Sturdevant v. State***, 76 Wis. 2d 247, 250, 251 N.W.2d 50 (1977). Ch-ab was stopped while driving on a state highway near the Village of Slinger because his vehicle did not display license plates as required by Wisconsin law. To the extent Ch-ab surrendered his driver's license and license plates before the stop, he could not lawfully operate his vehicle on Wisconsin roads. *See* WIS. STAT. § 343.265(1m) (permitting Department of Transportation to "accept the voluntary surrender of the operator's license of a person *who no longer intends to exercise the privilege of operating a vehicle class or type authorized by that license*") (emphasis added); WIS. STAT. § 343.05(3)(a) ("No person may operate a motor vehicle … upon a highway in this state unless the person possesses a valid operator's license ....").

¶15 Finally, the federal statute and constitutional provision cited by Ch-ab do not exempt him from Wisconsin's motor vehicle laws. The statute, 49 U.S.C. § 102(f)(2), requires the United States Secretary of Transportation "to exercise the trust obligations of the United States to Indians and Indian tribes to ensure that the rights of a tribe or individual Indian are protected" and specifies that nothing in Title 49 of the United States Code "shall absolve the United States from any responsibility to Indians and Indian tribes, including responsibilities derived from the trust relationship and any treaty, executive order, or agreement between the United States and an Indian tribe." These general provisions do not allow Ch-ab to drive his vehicle in Wisconsin without an operator's license or valid license plates. Nor does Article I, Section 2, Clause 3 of the U.S. Constitution, which addresses the apportionment of members of the House of Representatives among the states.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.