COURT OF APPEALS
DECISION
DATED AND FILED

**February 26, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP227**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV266

IN COURT OF APPEALS
DISTRICT II

CITY OF DELAFIELD,

   PLAINTIFF-RESPONDENT,

 V.

SHAWN M. OFFICE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: DENNIS P. MORONEY, Reserve Judge. *Affirmed*.

¶1     NEUBAUER, J.[1] Shawn M. Office appeals from a judgment entered after the circuit court found him guilty of operating a motor vehicle while

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

under the influence of an intoxicant (OWI), first offense, contrary to WIS. STAT. § 346.63(1)(a). He challenges the court's denial of his motion to suppress evidence, arguing that the police lacked probable cause to arrest him.[2] Because sufficient evidence existed to reasonably believe that Office been driving while under the influence of an intoxicant, there was probable cause for his arrest. Accordingly, this court affirms.

## BACKGROUND

¶2 The following facts are drawn principally from testimony given at the suppression hearing. On January 9, 2021, at approximately 2:18 a.m., Kimberly Kuehl-Zoch, a City of Delafield police officer, observed a vehicle, later determined to be driven by Office, approaching from behind at a high rate of speed on State Highway 16. Kuehl-Zoch used rear radar to track the vehicle's speed at eighty-five miles per hour in a sixty-five-mile-per-hour zone. After passing Kuehl-Zoch's fully marked squad, the vehicle slowed to fifty miles per hour. Using the vehicle's registration plate, Kuehl-Zoch determined that the vehicle's registration was expired and "suspended for a damage judgment." Kuehl-Zoch continued to follow Office. Office activated his hazard lights and pulled over from the left lane onto the median shoulder, but only partially, as the vehicle's passenger-side tires were on the highway and on the yellow line. Kuehl-Zoch pulled behind the vehicle and activated her lights.

---

[2] The Honorable Michael O. Bohren presided at the motion hearing and denied Office's motion to suppress. The Honorable Dennis P. Moroney presided at the court trial and entered judgment. In addition to OWI, the circuit court found Office guilty of: (1) operating a vehicle with a suspended license; (2) nonregistration of a vehicle; (3) operating after revocation/suspension of registration; and (4) refusing to consent to a blood test. Office does not provide any basis to challenge these traffic violations.

¶3 Office got out of his vehicle and began checking the body or tires on the passenger side. He was standing halfway into the traffic lane. Kuehl-Zoch approached Office and asked him to move out of the traffic lane and get back into his vehicle. Office said his tire sensor went off, although Kuehl-Zoch did not observe anything on the tire or vehicle "that stood out as [an] immediate cause to pull over where he did." Office was hostile towards Kuehl-Zoch but subsequently complied.

¶4 Kuehl-Zoch went to the vehicle's passenger side, which was occupied by a female. With the passenger window down, Kuehl-Zoch asked where Office and his passenger had come from and where they were going. Office "was again hostile" and refused to identify himself or provide identification, demanded a police supervisor be present, and rolled up his window. During the exchange, Kuehl-Zoch noticed the odor of intoxicants coming from the passenger side of the vehicle and Office's slurred speech.

¶5 Kuehl-Zoch went back to her squad car and called for additional police assistance. When two officers arrived, Kuehl-Zoch approached Office again. Office continued to refuse to identify himself and said he was going to leave. Kuehl-Zoch asked Office to exit the vehicle to prevent him from fleeing, and the officers directed Office to the vehicle's rear. During this interaction, Kuehl-Zoch again noticed Office's slurred speech and the odor of intoxicants emanating from him. Office denied having had anything to drink that day.

¶6 Kuehl-Zoch then went to the passenger side and asked the female to identify herself. Office again yelled, telling the woman not to identify herself. Kuehl-Zoch explained to her that she needed to determine if someone had a valid driver's license and could drive the vehicle. Office then began to move towards

Kuehl-Zoch. The police placed Office in handcuffs "for officer safety reasons" and moved him into the locked back seat of Kuehl-Zoch's squad. One of the other officers noticed the odor of intoxicants from Office.

¶7    After approximately five to six minutes, Kuehl-Zoch spoke again with Office and advised that she could smell the odor of intoxicants "when [they] took [him] into custody" and asked him to submit to field sobriety testing (FST). Office refused. During the interaction, Kuehl-Zoch again noticed the odor of intoxicants emanating from Office and his slurred speech. Kuehl-Zoch then informed Office that he was under arrest for OWI.

¶8    Office moved to suppress evidence obtained after he was placed in handcuffs on the ground that he was functionally arrested at the point he was handcuffed and placed into the squad car, and that the police lacked probable cause at that time to arrest him. The circuit court denied the motion after an evidentiary hearing, ruling that Office was placed into the squad for officer safety, and that "the odor of intoxicants with the exceptional belligerent attitude in and of itself was a basis to arrest him for operating under the influence." The court also noted Office's "refusal to cooperate at any level with regard to the arrest. The[n] add to that is a refusal, ultimately, to take field sobriety tests. Really multiplies the reasonable-ness of the effort to place him under arrest, so I'm satisfied that the arrest was proper."

¶9    After a trial to the court, Office was found guilty of OWI, first offense. Office appeals.

**DISCUSSION**

¶10     When reviewing a denial of a motion to suppress for lack of probable cause, we will uphold the circuit court's factual findings unless they are clearly erroneous.  *State v. Blatterman*, 2015 WI 46, ¶16, 362 Wis. 2d 138, 864 N.W.2d 26.  We independently review, however, the application of those facts to constitutional principles, as that is a question of law.  *Id.*

¶11     The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect individuals against unreasonable seizures.  U.S. CONST. amend IV; WIS. CONST. art. I, § 11.  A seizure is not unreasonable when a law enforcement officer reasonably believes that the suspect "probably committed or was committing a crime."  *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999); *State v. Sykes*, 2005 WI 48, ¶14, 279 Wis. 2d 742, 695 N.W.2d 277 ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment." (citation omitted)).  Applied to this case, probable cause "exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe … that the defendant was operating a motor vehicle while under the influence of an intoxicant."  *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986).  A reasonable officer need only "believe that guilt is more than a possibility."  *County of Dane v. Sharpee*, 154 Wis. 2d 515, 518, 453 N.W.2d 508 (Ct. App. 1990) (citation omitted).  "When a police officer is confronted with two reasonable competing inferences, one justifying arrest and the other not, the officer is entitled to rely on the reasonable inference justifying arrest."  *State v. Kutz*, 2003 WI App 205, ¶12, 267 Wis. 2d 531, 671 N.W.2d 660.

¶12 Office argues that there was insufficient evidence for Kuehl-Zoch to reasonably believe that he was operating his car while under the influence of an intoxicant and that, therefore, she lacked probable cause to arrest him. This court disagrees.

¶13 First, Office does not dispute that reasonable suspicion supported the investigatory stop itself, given that he was speeding. *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999) (explaining that "an officer may make an investigative stop if the officer 'reasonably suspects' that a person … is violating the non-criminal traffic laws"); *State v. Griffin*, 183 Wis. 2d 327, 333-34, 515 N.W.2d 535 (Ct. App. 1994); *Terry v. Ohio*, 392 U.S. 1 (1968).

¶14 During an investigatory stop, police may ask the driver to exit the vehicle, request identification, and "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985); *State v. Smith*, 2018 WI 2, ¶2, 379 Wis. 2d 86, 905 N.W.2d 353 ("We hold that when an officer conducts a valid traffic stop, part of that stop includes checking identification."); *State v. Brown*, 2020 WI 63, ¶20, 392 Wis. 2d 454, 945 N.W.2d 584 (asking lawfully detained motorist to exit vehicle "is 'of no constitutional moment'" (citation omitted)).

¶15 Second, this court rejects Office's contention that he was effectively arrested when the officers moved him to the squad and placed him in handcuffs. Office seeks to preclude evidence of his refusal to perform FSTs when considering whether probable cause supported his arrest for OWI because he had already been arrested when he was handcuffed and placed in the squad car. *See State v. Babbitt*, 188 Wis. 2d 349, 359-60, 363, 525 N.W.2d 102 (Ct. App. 1994) (stating

that a refusal to submit to a field sobriety test may be used as evidence of probable cause to arrest because it shows consciousness of guilt).

¶16    The use of handcuffs "does not necessarily render a temporary detention unreasonable [or transform a] detention into an arrest." *Blatterman*, 362 Wis. 2d 138, ¶31 (alterations in original; citation omitted). "[F]or such measures to be reasonable, they must be justified by particular circumstances, such as the risk of harm to the officers." *Id.*   Here, the evidence presented during the suppression hearing showed that Office had been belligerent and uncooperative, that he yelled at the officers and at his passenger not to cooperate, and that he was stopped by the officers when he began to move towards Kuehl-Zoch.  He smelled of alcohol and his speech was slurred.  The circuit court found that the officers placed Office in the squad with handcuffs in order to de-escalate the hostile encounter and continue the investigatory stop while ensuring the officers' safety.  That finding is not clearly erroneous.

¶17    While Kuehl-Zoch stated to Office that he was in "custody" when she requested that he perform the FSTs, this was affirmation that the initial investigatory seizure continued into an OWI investigation.  Although Office was not free to leave, the *Terry* stop did not evolve into a formal arrest at this juncture.  *See **Berkemer v. McCarty**,* 468 U.S. 420, 435-37 (1984) (rejecting argument that a person is in custody in every traffic stop).  It was after Office refused to perform the FSTs that Kuehl-Zoch advised Office that he was under arrest for OWI.

¶18    Turning to the issue of probable cause, this court agrees with the circuit court's conclusion that the circumstances would lead a reasonable officer to believe, *even if* considered without Office's refusal to perform FSTs, that he was driving while under the influence of an intoxicant.  The stop occurred at about

2:00 a.m., a time at which a higher percentage of drivers than normal are under the influence of an intoxicant. *See* ***State v. Swanson***, 164 Wis. 2d 437, 453 n.6, 475 N.W.2d 148 (1991) (accident occurring at 2:00 a.m. is an indicia of driving while under the influence, as this is the time bars in Wisconsin close), *abrogated on other grounds by* ***Sykes***, 279 Wis. 2d 742, ¶27. Kuehl-Zoch detected an odor of alcohol, as did her fellow officer, and Office's speech was slurred. Office's initial high rate of speed—exceeding the limit by twenty miles per hour, and then immediately and dramatically slowing to fifteen miles per hour below the limit after seeing the officer—suggest intoxicant usage and, perhaps, consciousness of guilt. Office's belligerent and uncooperative attitude suggest the same.

¶19 Office argues that other than the smell of alcohol and Office's slurred speech, there were no other signs of intoxication—his driving behavior itself did not suggest any impairment as it merely involved a speed limit violation, and individuals often get angry when stopped. He argues that these are "common" behaviors that are not necessarily indicative of intoxication.

¶20 Office's argument fails. In addition to the time of night and the high rate of speed followed by dramatic slowing down, Office pulled over onto the median side (and not completely), rather than the right side of the road. He exited the car and went into the lane of traffic to check the passenger side, and his hostile and uncooperative behavior was far from common. This court is also mindful that probable cause must be determined on the *totality* of the circumstances. It is a "flexible, common-sense measure of the plausibility of particular conclusions about human behavior." ***State v. Lange***, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551 (citation omitted). Also, it does not require conclusive proof or even a preponderance of evidence. ***Id.***, ¶38. It deals with probabilities, not certainties, and it does not require an officer to rule out innocent explanations before making

an arrest. *See* ***State v. Nieves***, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125. If guilt is more than a possibility, probable cause exists. ***Sharpee***, 154 Wis. 2d at 518. Here, this court agrees with the circuit court that the circumstances, viewed as a whole, establish probable cause for Office's arrest.

## CONCLUSION

¶21 Based on all of the circumstances, we conclude that there was sufficient evidence for Kuehl-Zoch to reasonably believe that Office was driving his vehicle while under the influence of an intoxicant. She therefore had probable cause to arrest him and the circuit court properly denied the motion to suppress.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.